UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

THE HUNTINGTON NATIONAL BANK,
AS TRUSTEE,                                                                                          Plaintiff,

v.                                                                              Civil Action No. 3:16-cv-465-DJH

SAINT CATHARINE COLLEGE, INC., et al.,                                        Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

After Defendant Saint Catharine College (SCC) closed its doors, Plaintiff Huntington National Bank filed suit seeking to recover its debts. Huntington, an Ohio bank, filed its complaint against SCC, a Kentucky corporation, in federal court pursuant to the Court's diversity jurisdiction. (Docket No. 1) Farmers National Bank, a Kentucky bank and creditor of SCC, sought to intervene in an effort to protect its own interests in SCC's property. (D.N. 8) The Court granted Farmers' motion and Farmers became an intervenor defendant, cross claimant, and counter claimant. (D.N. 21) Huntington and a court-appointed receiver have now jointly moved the court to approve the sale of certain personal property. (D.N. 26) Meanwhile, Farmers has filed a motion for leave to realign the parties and dismiss for lack of subject matter jurisdiction, arguing that it should be realigned as an intervenor plaintiff. (D.N. 35) If Farmers is realigned, the Court's diversity jurisdiction will be destroyed and the Court will have to dismiss the case for lack of subject matter jurisdiction. (*Id.*) Because the Court finds that Farmers' interests are not aligned with the interests of Huntington National Bank, the Court will deny Farmers' motion for leave to realign the parties and dismiss for lack of subject matter jurisdiction. In addition, the joint motion for the sale of certain personal property will be granted because the statutory

1

requirements for the sale of personalty have been met and Farmers' only argument in opposition was the Court's lack of subject matter jurisdiction.

I.     BACKGROUND

Plaintiff Huntington National Bank, "a commercial banking institution organized and operating under the laws of the state of Ohio," filed a complaint against Defendant Saint Catharine College (SCC), "a Kentucky corporation with its principal place of business in Saint Catharine, Kentucky," seeking to recover over $24 million in debt, plus interest and attorneys' fees. (D.N. 1, PageID # 9; D.N. 35-1, PageID # 587) In filing this complaint, Huntington relied on the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Two days later, Farmers National Bank, "a commercial banking institution organized and operating under the laws of the Commonwealth of Kentucky, with its principal place of business in Lebanon, Kentucky" filed a motion for leave to intervene. (D.N. 35-1, PageID # 587-88) Farmers asserted that it was a creditor of SCC, and thus, had an interest in SCC's property. (D.N. 8) The court granted Farmers' motion and entered Farmers as an intervenor defendant, cross claimant, and counter claimant. (D.N. 21)

In the meantime, Huntington moved to have a receiver appointed "for the purpose of repairing, maintaining and managing the Property." (D.N. 4-1, PageID # 196) The Court granted this motion and LS Associates, LLC was appointed as receiver. (D.N. 12) Since its appointment, LS Associates has made a number of expenditures as part of its efforts to maintain the closed college, including addressing student refund issues, making payments on final payroll obligations, paying medical claims, retaining security for the Property, and paying utilities on the Property, among many other things. (D.N. 38-1, PageID # 613-14)

LS Associates and Huntington next filed a joint motion requesting approval to sell certain personal property at a public auction.[1]  (D.N. 26)  Farmers then filed a motion for leave to properly align parties and dismiss for lack of subject matter jurisdiction.  (D.N. 35)  In its motion, Farmers argued that it should be considered a plaintiff, rather than a defendant, because its interests are aligned with Huntington National Bank.  (*See id.*)  If Farmers' motion is granted, the Court's diversity jurisdiction will be destroyed.  Farmers used the same argument in its response to the motion for order of sale of certain personal property, asserting that once the parties are "properly aligned," the Court will lack subject matter jurisdiction, and thus, cannot grant the motion.  (*See* D.N. 37)  In response, LS Associates and Huntington contend that the parties are properly aligned.  (D.N. 40, PageID # 627-30)  Alternatively, they argue that even if realignment is proper, "the Court should exercise its discretion to dismiss [Farmers] as a party rather than dismissing this case."  (*Id.*, PageID # 630-32)

## II.    DISCUSSION

### a.  Realignment

Determining the appropriate alignment of parties "must be ascertained from the principal purpose of the suit, . . . and the primary and controlling matter in dispute.'" *City of Indianapolis v. Chase Nat. Bank of City of N.Y.*, 314 U.S. 63, 69 (1941) (internal quotation marks omitted). The Sixth Circuit interprets this test to "require[] that parties be aligned in accordance with the primary dispute in the controversy, even where a different, legitimate dispute between the parties supports the original alignment." *U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992). "Courts seem consistently to have determined that, where the plaintiff's

---

[1] Huntington and LS Associates also filed two joint motions for the sale of real property (D.N. 27; D.N. 32); however, because a hearing will be held on those motions (D.N. 44), they will not be addressed in this opinion.

case includes a substantive cause of action against a defendant, that defendant should not be realigned as a plaintiff notwithstanding the fact that both plaintiff and defendant would benefit from a finding against a second defendant." *Gibson Guitar Corp. v. Mitsui Sumitomo Ins. of Am.*, No. 3:11-CV-00370, 2011 WL 3566408, at *4 (M.D. Tenn. Aug. 15, 2011).

In this case, Farmers argues that "the 'primary purpose' of the instant action is the protection and marshaling of SCC's property through the appointment of a receiver." (D.N. 35-1, PageID # 589) Therefore, Farmers asserts that its interests are better aligned with Huntington because both are seeking "to prevent loss, removal, or material injury to the assets of the college." (*Id*., PageID # 589-90) Huntington and LS Associates maintain that the primary dispute is the collection of debt by SCC's creditors. (D.N. 40, PageID # 628) Therefore, Farmers and Huntington should be considered adversaries competing for a fixed amount of money to pay off their debts. (*Id*.)

The Court finds that the primary dispute in this case is how the money from the sale of SCC's assets is to be distributed. Farmers' own filings suggest that debt collection is the primary issue in this case. For example, Farmers' answer to Huntington's complaint demanded that the complaint be dismissed and Huntington "take nothing." (D.N. 31, PageID # 519) Additionally, Farmers' motion to intervene stated that it sought to intervene because "the Plaintiff's Complaint in this proceeding seeks the sale of certain undescribed property of Saint Catharine College, Inc," and "thus, presumably, the Plaintiff's Verified Complaint contemplates the possible sale of the real property owned by Saint Catharine College, Inc., upon which [Farmers] holds a Second Mortgage." (D.N. 8, PageID # 236-37) Farmers then added,

> because it is clear that Farmers . . . has a significant claim and interest in the property of Saint Catharine College, Inc.; it appears that the ability of FNB to protect that interest may very well be impaired or impeded by the disposition of this matter; and it further appearing that no other party in this action has an

>   incentive to protect the interest of FNB, respectfully requests that the Court enter an Order granting it leave to file the attached Intervening Answer, Counterclaim and Crossclaim.

(*Id.*) In other words, Farmers' primary objective in intervening was to protect its own interests as a creditor, not to assist Huntington, a fellow creditor, in protecting and marshaling SCC's assets.

Farmers provided further evidence of its adversarial relationship with Huntington with respect to debt collection when it opposed Huntington's motions for the sale of SCC's property. (D.N. 36; D.N. 37; D.N. 42) In its response to the sale of a piece of real property, Farmers requested that Huntington be required to marshal the assets, explaining:

>   The doctrine of marshaling assets requires that where two or more creditors seek satisfaction out of the assets of their common debtor, and one of them can resort to two funds where another has recourse to only one of the funds, the former creditor may be required to seek satisfaction out of the funds which the latter creditor cannot reach, before resorting to the other fund. By this method of distribution both creditors may be paid or both funds will be exhausted.

(D.N. 36, PageID # 598-99) (citing *Bartley v. Pikeville Nat. Bank & Trust Co.*, 532 S.W.2d 446, 448 (Ky. 1975), *see also M.A. Walker Co., Inc. v. PBK Bank, Inc.*, 95 S.W.3d 70, 75-76 (Ky. 2002)). Farmers' filings indicate that Farmers is primarily concerned with the distribution of SCC's assets, not the receivership, because Farmers knows that it is competing with Huntington for a limited pot of money.

While it is true that both Huntington and Farmers share a common interest in protecting SCC's assets, this interest is secondary to their adversarial interest in collecting the debts owed to them from the sale of SCC's assets. *See U.S. Fid. & Guar. Co.*, 955 F.2d at 1089 ("despite the fact that there may be actual and substantial ancillary or secondary issues to the primary issue, the parties should be aligned in accordance with the primary issue in an action"); *Citizens Bank v. Plasticware, LLC*, 830 F. Supp. 2d 321, 326–27 (E.D. Ky. 2011); *Gibson Guitar Corp.*, 2011

WL 3566408, at *3 ("The court finds that Gibson correctly characterizes this suit's primary purpose as determining 'the allocation of responsibility among the insurers and brokers for Gibson's $17 million loss.'"); *DiBella v. Carpenter*, No. 2:10-CV-174, 2010 WL 2605824, at *1 (S.D. Ohio June 25, 2010) ("There is no question that the primary dispute identified in the amended complaint is the parties' disagreement about how the money from the sale of Engage's assets is to be distributed."); *Hopkins Erecting Co. v. Briarwood Apartments of Lexington*, 517 F. Supp. 243, 251 (E.D. Ky. 1981) ("The necessary collision of interests exists between plaintiff and the other lienholders because plaintiff demands that its lien be adjudged prior and superior to all other interests."); *Irving Trust Co. v. Century Exp. & Imp., S.A.*, 464 F. Supp. 1232, 1241 (S.D.N.Y. 1979) ("The 'primary purpose' of Irving's suit is to collect its $500,000 debt."). Additionally, as noted in Huntington's response to Farmers' motion for realignment, a receivership cannot be the primary dispute in a case. "A receivership is only a means to reach some legitimate end sought through the exercise of the power of a court of equity. It is not an end in itself." *Gordon v. Washington*, 295 U.S. 30, 37 (1935). "Although a receivership is not an end in itself, there can be no doubt that a court of equity has power to appoint a receiver when the appointment is 'ancillary to some form of final relief which is appropriate for equity to give.'" *Garden Homes, Inc. v. United States*, 200 F.2d 299, 301 (1st Cir. 1952) (quoting *Gordon*, 295 U.S. at 38). Thus, in this case, the receivership is "ancillary" to the distribution of money from the sale of SCC's assets. *See id*.

Therefore, because the primary dispute is the collection of debt by SCC's creditors, no realignment of the parties is necessary. As a result, the Court maintains diversity jurisdiction over the case and the motion for leave to properly align parties and dismiss for lack of subject matter jurisdiction will be denied.

### b. Sale of Personal Property

Huntington and LS Associates have filed a joint motion seeking approval to sell "Medical/Laboratory Equipment, Class Rooms/Furnishings, Auditorium Equipment, Cooking Kitchen Equipment, Office Equipment, Conference Room Equipment, Dormitory Equipment, Student Union/Store Equipment, Library Equipment, IT Equipment, Athletic Department Equipment, Training Equipment, Furniture, Supplies, Signage, Building Support Equipment/Assets, Generator, & other Miscellaneous Equipment" at public auction. (D.N. 26, PageID # 420-21)  Huntington and LS Associates assert that the sale complies with the requirements of 28 U.S.C. § 2004, which provides, "any personalty sold under any order or decree of any court of the United States shall be sold in accordance with section 2001 of this title, unless the court orders otherwise." Section 2001 states in relevant part:

> Property in the possession of a receiver or receivers appointed by one or more district courts shall be sold at public sale in the district wherein any such receiver was first appointed, at the courthouse of the county, parish, or city situated therein in which the greater part of the property in such district is located, or on the premises or some parcel thereof located in such county, parish, or city, as such court directs, unless the court orders the sale of the property or one or more parcels thereof in one or more ancillary districts.

28 U.S.C. § 2001.  In this case, LS Associates has retained GA Global Partners to auction the property at a public sale. (D.N. 26-1, PageID # 422)  This auctioneer was selected for its ability to conduct "a live auction at which bidders from all over the globe may participate and bid via webcast," and thus, "maximize[e] the return to the Receivership estate."  (*Id*.)  The Court has reviewed the Auction Agreement and concludes that the terms and conditions of the agreement appear reasonable. (D.N. 26-6, PageID # 443-54)

Farmers argues that this motion should be denied because, "upon proper alignment of the parties," subject matter jurisdiction would be lacking. (D.N. 37, PageID # 604)  However, as

explained above, the parties are properly aligned and thus, the Court has subject matter jurisdiction over the case. Therefore, because the sale of this personal property complies with the statutory requirements and the terms of the agreement are reasonable, the Court will grant this motion.

In addition, Huntington and LS Associates ask the Court to waive confirmation of the sale. (D.N. 26-1, PageID # 423-24) The Court will grant this request. The Court finds that because "the personal property is of limited value to the receivership estate," the Auction Agreement details the specific terms of the agreement, and the results of the auction will be disclosed by the receiver in its monthly report, there is no need for the Court to further confirm these sales. (*Id.*)

### III. CONCLUSION

For the reasons explained above, the parties will not be realigned and the Court will grant the joint motion for order of sale for certain personal property. Accordingly, and the Court being sufficiently advised, it is hereby

**ORDERED** as follows:

(1) The intervenor defendant's motion for leave to properly align parties and dismiss for lack of subject matter jurisdiction (D.N. 35) is **DENIED**.

(2) The joint motion for order of sale for certain personal property (D.N. 26) is **GRANTED**.

(3) The receiver is authorized to sell the Personal Property.

(4) The Court waives confirmation of the sale.

October 28, 2016

**David J. Hale, Judge**
**United States District Court**

8