UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

THE HUNTINGTON NATIONAL BANK,
AS TRUSTEE,                                                                                                  Plaintiff,

v.                                                                                Civil Action No. 3:16-cv-465-DJH

SAINT CATHARINE COLLEGE, INC., et al.,                                                Defendants.

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

After Defendant Saint Catharine College (SCC) closed its doors, Plaintiff Huntington National Bank filed this suit seeking to recover its debts. On July 19, 2016, Huntington, an Ohio bank, filed its complaint against SCC, a Kentucky corporation, in federal court pursuant to the Court's diversity jurisdiction. (Docket No. 1) On July 21, 2016, Farmers National Bank, a Kentucky bank and creditor of SCC, sought to intervene in an effort to protect its own junior interest in SCC's property. (D.N. 8) Huntington is the superior lienholder in St. Catharine's property. (D.N. 47, PageID # 717) The Court granted Farmers' motion on September 2, 2016, and Farmers became an intervenor defendant, cross claimant, and counter claimant. (D.N. 21) On October 14, 2016, Farmers filed a motion to realign the parties and dismiss the case for lack of subject matter jurisdiction, arguing that it should be realigned as an intervenor plaintiff. (D.N. 35) This Court found that the parties were properly aligned and denied Farmers' motion. (D.N. 45) Farmers has now filed a motion to alter the Court's ruling or, alternatively, certify the order for interlocutory appeal. (D.N. 49) For the reasons discussed below, this motion will be denied.

**I.     BACKGROUND**

Plaintiff Huntington National Bank, "a commercial banking institution organized and operating under the laws of the state of Ohio," sued Defendant Saint Catharine College (SCC),

1

"a Kentucky corporation with its principal place of business in Saint Catharine, Kentucky," seeking to recover over $24 million in debt, plus interest and attorneys' fees. (D.N. 1, PageID # 9; D.N. 35-1, PageID # 587) In filing its complaint, Huntington relied on the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (D.N. 1, PageID # 2) Two days later, Farmers National Bank, "a commercial banking institution organized and operating under the laws of the Commonwealth of Kentucky, with its principal place of business in Lebanon, Kentucky," filed a motion for leave to intervene. (D.N. 35-1, PageID # 587–88) Farmers asserted that it was a creditor of SCC and thus had an interest in SCC's property. (D.N. 8) The court granted Farmers' motion, and Farmers was added to the action as an intervenor defendant, cross claimant, and counter claimant. (D.N. 21)

In the meantime, Huntington moved to have a receiver appointed "for the purpose of repairing, maintaining and managing" SCC's property. (D.N. 4-1, PageID # 196) The Court granted this motion, and LS Associates, LLC was appointed as receiver. (D.N. 12) Since its appointment, LS Associates has made a number of expenditures as part of its efforts to maintain the closed college, including addressing student refund issues, making payments on final payroll obligations, paying medical claims, retaining security for SCC's property, and paying utilities on SCC's property, among many other things. (D.N. 38-1, PageID # 613–14)

LS Associates and Huntington next filed a joint motion requesting approval to sell certain personal property at a public auction.[1] (D.N. 26) Farmers then filed a motion to realign the parties and dismiss for lack of subject matter jurisdiction. (D.N. 35) In its motion, Farmers argued that it should be considered a plaintiff, rather than a defendant, because its interests are

---

[1] Huntington and LS Associates also filed two joint motions for the sale of real property (D.N. 27; D.N. 32); however, because a hearing on these motions was held on November 9, 2016, they will not be addressed in this opinion.

2

aligned with Huntington National Bank. Because this realignment would destroy diversity jurisdiction, Farmers maintained the case should be dismissed for lack of subject matter jurisdiction. (*See id.*) Farmers used the same argument in its response to the motion for order of sale of personal property, asserting that once the parties were "properly aligned," the Court would lack subject matter jurisdiction and thus could not grant the motion. (*See* D.N. 37) In response, LS Associates and Huntington argued that the parties were properly aligned. (D.N. 40, PageID # 627–30)

In its October 28, 2016 Memorandum Opinion and Order, the Court held that the parties were properly aligned because the primary dispute in this action "is how the money from the sale of SCC's assets is to be distributed." (D.N. 45, PageID # 658) Thus, Farmers and Huntington were properly aligned as adversaries, and the Court retained diversity jurisdiction. (*Id.*, PageID # 660) Additionally, "because the statutory requirements for the sale of personalty [were] met and Farmers' only argument in opposition was the Court's lack of subject matter jurisdiction," the Court granted the joint motion to approve the sale of personal property. (*Id.*, PageID # 655–56)

Farmers has now filed a motion to alter or amend that ruling or, alternatively, to certify the order for interlocutory appeal. (D.N. 49) In response, Huntington and LS Associates assert that the Court was correct in denying Farmers' motion for realignment. (D.N. 51, PageID # 738–39; D.N. 52, PageID # 748) Additionally, they argue that the order should not be certified for interlocutory appeal because the three requirements for interlocutory appeal have not been satisfied. (D.N. 51, PageID # 739–44)

## II.     DISCUSSION

### a.  Motion to Alter or Amend the Order

"The court may grant a motion to alter or amend 'if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice.'" *Boling v. Prospect Funding Holdings, LLC*, No. 1:14-CV-00081-GNS-HBB, 2016 WL 1611383, at *2 (W.D. Ky. Apr. 21, 2016) (citing *GenCorp v. Am. Int'l*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted)).  "The moving party bears '[t]he burden of demonstrating the existence of a manifest error of fact or law.'"  *Id*. (citing *Doe v. Patton*, 381 F. Supp. 2d 595, 605 (E.D. Ky. 2005), *aff'd sub nom. Doe v. Magoffin Cty. Fiscal Court*, 174 F. App'x 962 (6th Cir. 2006)).

Farmers urges the Court to exercise its "wide discretion" in reconsidering the order. (D.N. 53, PageID # 751 (citing *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004).))  In seeking to alter or amend the Order, Farmers first argues that the Court did not properly consider the reply brief.  Farmers asserts that it had until 4:00p.m. on October 28, 2016 to file its reply, but the Order was signed on October 28, 2016, and does not cite Farmers' reply brief.  In Farmers' view, this omission implies that the Court did not consider the reply.  (*Id*., PageID # 727–28)  This suggestion is not well taken.

In fact, the Court carefully reviewed Farmers' reply brief and gave it due consideration before finalizing the Order.  Because an auction is scheduled for November 11, 2016, this case has required an expedited schedule, including requests to expedite so that the parties have sufficient time to prepare for the auction date.  (*See* D.N. 38; D.N. 39)  The Order was signed on October 28, 2016, but it was not entered until October 31, 2016.  (D.N. 49-1, PageID # 728) This sequence indicates that the Order was signed late in the day on October 28, 2016, giving the Court sufficient time to consider Farmers' reply brief.

Farmers' reply brief included approximately two pages directly addressing the bank's argument for realignment. (D.N. 43, PageID # 647–50) In this section, Farmers cited only one case, *U.S. Fidelity & Guaranty Co. v. Thomas Solvent Co.*, 955 F.2d 1085 (6th Cir. 1992). The same case was cited multiple times in Farmers' original motion for realignment, as well as Huntington's response brief. (*See* D.N. 35-1) Farmers then reiterated its earlier argument that Huntington and Farmers should not be viewed as adversaries because the primary dispute is not the distribution of SCC's assets, but rather the banks' respective judgments against SCC and "the protection and marshalling of SCC's property through the appointment of a receiver." (*Id.*, PageID # 589, D.N. 43, PageID # 649) Notably, Farmers provided no new facts, caselaw, or arguments in its reply; the reply only provided a more expansive argument as to how *Thomas Solvent* should be interpreted to support Farmers' argument. In short, nothing in Farmers' reply altered the Court's analysis, and there was thus no need to reference it.

Farmers also argues that if the Court limits its reconsideration to the circumstances outlined by the Sixth Circuit, there was "clear error in the application of the standards for alignment of parties articulated in [*Thomas Solvent*]." (D.N. 53, PageID # 752) However, Farmers does not explain how the Court misapplied the standard in *Thomas Solvent*. As Farmers has repeatedly argued, *Thomas Solvent* established that parties are to be aligned based on the "primary dispute" in the case. (*See* D.N. 43, PageID # 648) Thus, this "primary dispute" test is the "controlling analysis." (*Id.*) In its Memorandum Opinion and Order, the Court applied the primary-dispute test. (D.N. 45, PageID # 657–58) While Farmers may disagree with the Court's conclusions as to what constitutes the primary dispute in this case, its argument that there was a clear error of law fails. Farmers' motion to alter or amend the Court's Memorandum Opinion and Order will therefore be denied.

5

### b. Interlocutory Appeal

Alternatively, Farmers asks the Court to certify its order for interlocutory appeal. (D.N. 49-1, PageID # 728–30) But "[r]eview under § 1292(b) is granted sparingly and only in exceptional cases." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002) (citing *Kraus v. Bd. of Cty. Rd. Comm'rs,* 364 F.2d 919, 922 (6th Cir. 1966)). To certify an order for interlocutory appeal, the Court must find "that its order (1) involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *In re Buccina*, No. 16-0303, 2016 WL 3597632, at *1 (6th Cir. July 1, 2016); *see also* 28 U.S.C. § 1292(b). All three statutory requirements "must be met for the court to certify an appeal under § 1292(b)." *Lang v. Crocker Park, LLC*, No. 1:09 CV 1412, 2011 WL 3297865, at *5 (N.D. Ohio July 29, 2011).

#### 1.

With respect to the first element, "there is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment." 16 Charles Alan Wright, Arthur Miller, et al., *Federal Practice and Procedure* § 3930 (3d ed. 2016). Here, as Farmers points out, the question of realignment is controlling because reversal will be required if the Court is incorrect and Farmers should be realigned. (D.N. 49, PageID # 729)

However, the order did not involve a controlling question of *law*. The Sixth Circuit has explained that "[o]n interlocutory appeal the appellate court has no authority to review disputed questions of fact. Therefore, our review of the district court's decision is limited to pure questions of law." *Foster Wheeler Energy Corp. v. Metro. Knox Solid Waste Auth., Inc.*, 970 F.2d 199, 202 (6th Cir. 1992). Farmers asserts that "interpretation of the Sixth Circuit's

6

instructions as to proper alignment of parties under [*Thomas Solvent*] is clearly a matter of law." (D.N. 49-1, PageID # 729) The court disagrees.

While the line between law and fact may be blurred at times, "question of law" has been interpreted to "mean[] an abstract legal issue." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676–77 (7th Cir. 2000). In holding that a motion for summary judgment was "unsuitable for appeal under section 1292(b) because it does not present an abstract legal issue," Judge Posner wrote:

> We think [the framers of § 1292(b)] used "question of law" in much the same way a lay person might, as referring to a "pure" question of law rather than merely to an issue that might be free from a factual contest. The idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case.

*Id.* To put it another way, "routine applications of well-settled legal standards to facts alleged in a complaint are not appropriate for interlocutory appeal." 2 Barbara J. Van Arsdale, et al., Fed. Proc., Lawyers Ed. § 3:218 (2016) (citing *In re Text Messaging Antitrust Litig.*, 630 F.3d 622 (7th Cir. 2010)).

Farmers "concedes that in cases where extensive factual determinations have been required of the District Court in evaluating the proper alignment of the parties to determine if it has subject matter jurisdiction, interlocutory appeal is not appropriate." (D.N. 53, PageID # 753) Nevertheless, it maintains that the Sixth Circuit will be able to "'quickly and cleanly' decide the issue of this Court's subject matter jurisdiction." (*Id.*) However, an issue is not "quick[] and clean[]" if the appellate court must study the record to resolve it. *Ahrenholz*, 219 F.3d at 676–77.

The Memorandum Opinion and Order at issue illustrates the fact-intensive nature of determining alignment. (*See* D.N. 45, PageID # 658–60) In determining the "primary dispute," the Court was required to thoroughly review the record and apply the facts to the "well-settled

7

legal standard." Van Arsdale et al., *supra*, § 3:218 (citing *In re Text Messaging Antitrust Litig.*, 630 F.3d 622). Farmers acknowledges that the Court was required to consider "the pleadings and documents appended thereto" in deciding whether to realign the parties. (D.N. 53, PageID # 753) Because the alignment question requires examination of the record, it is not a "question of law" and thus is not appropriate for interlocutory appeal. *See In re Buccina*, 2016 WL 3597632, at *1.

### 2.

"Of the three statutory criteria, the one requiring substantial ground for difference of opinion has caused the least difficulty. District judges have not been bashful about refusing to find substantial reason to question a ruling of law, even in matters of first impression." Wright et al., *supra*, § 3930. In the Sixth Circuit, "a substantial ground for difference of opinion" has been interpreted "to mean when (1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question." *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013).

In its motion to certify the Order for interlocutory appeal, Farmers asserts that it is "clear that there has been substantial confusion among trial courts as to the proper application of the Sixth Circuit's rules for properly aligning the parties, as set forth more particularly in [Farmers'] prior Reply [(D.N. 43)], leaving substantial grounds for a difference of opinion as to the correctness of this Court's decision." (D.N. 49-1, PageID # 729) However, it is unclear what Farmers refers to in its reply because, as mentioned earlier, the only case cited in its section on realignment is *Thomas Solvent*. (*See* D.N. 43, PageID # 647–50) In *Thomas Solvent*, the Sixth

8

Circuit directed "that parties be aligned in accordance with the primary dispute in the controversy, even where a different, legitimate dispute between the parties supports the original alignment." 955 F.2d at 1089. Therefore, because the law in this case has been settled for over twenty years, the Court finds that there is not "substantial ground for difference of opinion" regarding the law in this case. *See In re Miedzianowski*, 735 F.3d at 384.

Furthermore, while Farmers relied solely on its interpretation and application of *Thomas Solvent*, as noted in the Order, there are a number of cases that support the conclusion that the primary dispute in this case is the distribution of proceeds from the sale of SCC's assets. (D.N. 45, PageID # 659–60) *See Citizens Bank v. Plasticware, LLC*, 830 F. Supp. 2d 321, 326–27 (E.D. Ky. 2011); *Gibson Guitar Corp. v. Mitsui Sumitomo Ins. of Am.*, No. 3:11-CV-00370, 2011 WL 3566408, at *3–4 (M.D. Tenn. Aug. 15, 2011); *DiBella v. Carpenter*, No. 2:10-CV-174, 2010 WL 2605824, at *1 (S.D. Ohio June 25, 2010); *Hopkins Erecting Co. v. Briarwood Apartments of Lexington*, 517 F. Supp. 243, 251 (E.D. Ky. 1981); *Irving Tr. Co. v. Century Exp. & Imp., S.A.*, 464 F. Supp. 1232, 1241 (S.D.N.Y. 1979). Additionally, Farmers again implicitly acknowledged in its most recent motion that the distribution of SCC's assets is at the heart of this matter:

> While . . . its interest in obtaining a Judgment against St. Catharine for its $1.5 million debt, and the interest of the Plaintiff in obtaining a similar Judgment, albeit in a much larger amount, are not in conflict, the practicality of the matter is that the manner in which the Plaintiff and its Receiver are permitted to liquidate and distribute assets, if they are permitted to do so in this proceeding, may prove devastating to [Farmers]. From all outward appearances thus far, the Plaintiff and its Receiver will proceed with little regard for FNB's interests.

(D.N. 49-1, PageID # 729–30)

**3.**

With respect to the final element, Farmers emphasizes the financial harm it may suffer by providing a detailed valuation of the assets and noting its concerns about the future sale price of the assets. (D.N. 49-1, PageID # 729–30) However, the Court cannot consider such harms because determining whether this issue "materially advances the ultimate termination of the litigation" is limited to assessing whether court proceedings can be simplified or avoided by certifying the order for interlocutory appeal. Wright et al., *supra*, § 3930.

On the one hand, as Farmers argues, resolving this issue could reduce litigation because, if this Court is incorrect and Farmers should be realigned, reversal will be required and the case will be dismissed. (D.N. 49, PageID # 729) Thus, any proceedings that occur from this point forward in the case could have been avoided. On the other hand, as Huntington and LS Associates contend, granting this interlocutory appeal may, in fact, result in "extreme delay and hardship." (D.N. 51, PageID # 743) They argue that "permitting an interlocutory appeal with a stay of proceedings in this Court would completely undermine any ability of the Receiver to manage, care for, and liquidate the receivership estate." (*Id*.) The suggestion is that under these circumstances, all interested parties would suffer from the same delay.

While granting the interlocutory appeal could avoid some future proceedings, in the short term, it would cause delays and confusion. If the motion is granted, the Court will be forced to stay two motions for the sale of real property, and the receiver will have to reschedule a public auction to sell SCC's personal property. (*See* D.N. 38; D.N. 50) Therefore, the Court concludes that interlocutory appeal of the realignment decision would not "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

### III.  CONCLUSION

The Court declines to alter or amend its Order. Because Farmers fails to satisfy all three elements of § 1292(b), the Court will not certify that order for interlocutory appeal. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Farmers National Bank's Motion to Alter or Amend Order or, Alternatively, to Certify Order for Interlocutory Appeal (D.N. 49) is **DENIED**.

November 10, 2016

**David J. Hale, Judge**
**United States District Court**