UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

THE HUNTINGTON NATIONAL BANK,
AS TRUSTEE,                                                                                                  Plaintiff,

v.                                                                                      Civil Action No. 3:16-cv-465-DJH

SAINT CATHARINE COLLEGE, INC., et al.,                                     Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

After Defendant Saint Catharine College (SCC) closed its doors, Plaintiff Huntington National Bank filed this suit seeking to recover its debts. Huntington National Bank and Receiver LS Associates have moved the Court to approve the sale of two pieces of real property. (D.N. 27; D.N. 32) Because the Court finds that the statutory requirements have been met and the sale is in the best interests of the estate, the Court will grant both motions.

**I.   BACKGROUND**

Plaintiff Huntington National Bank and Receiver LS Associates have filed two joint motions for the sale of real property. (*See* D.N. 27; D.N. 32) The first requests approval of the sale of a 3-bedroom, 2-bathroom home located at 3161 Bardstown Road, Springfield, Kentucky. (D.N. 27-1) The PVA Valuation of the home is $101,000. (*Id*., PageID # 461) Additionally, LS Associates retained three independent appraisals, which all valued the property at $120,000. (*Id*., PageID # 466) The initial listing price for the property was $125,000, and the proposed sale price is $114,000. (*Id*, PageID # 462)

The second motion requests approval for the sale of 2-bedroom, 2-bathroom property located at 2670 Bardstown Road, Springfield, Kentucky. (D.N. 32-1, PageID # 544) While the property was originally intended to be a residential home, St. Catharine College used the

1

property as a clinic. (*Id.*) The PVA Valuation of the home is $84,000. (*Id.*) LS Associates also retained three independent appraisals, and the property was valued at $138,000; $140,000; and $140,000. (*Id.*, PageID # 549) The initial listing price was $155,000, and the proposed sale price is $115,000. (*Id.*, PageID # 544)

LS Associates retained the three appraisers by requesting a list of appraisers from the local county Commissioner's office. (D.N. 61, PageID # 827) From the list provided, LS Associates hired Charles Langford, Charles Polin, and Ralph Blandford. (*Id.*) LS Associates also published notice of the sales in the local weekly newspaper, The Springfield Sun. (D.N. 54; D.N. 63) The notification was initially published in hard copy on October 12, 2016, and October 19, 2016, and was available online. (D.N. 54; PageID # 757)

The Court heard argument on the two motions on November 9, 2016. (D.N. 58) Following the hearing, the Court issued an Order requiring LS Associates to publish the terms of the sale in the online version of The Springfield Sun for ten consecutive days, and to submit the professional qualifications of the appraisers. (*Id.*) LS Associates complied with the Court's order and submitted the qualifications of the appraisers (D.N. 61) and notified the Court that notice of the sales appeared on the website of The Springfield Sun for at least ten consecutive days. (D.N. 63-1, PageID # 849) In addition, notice of the sales was published in the hard-copy version of The Springfield Sun on November 16, 2016, and November 23, 2016. (*Id.*)

In response to the these motions for sale of real property, Intervenor Defendant Farmers National Bank argues that (1) the motions should be denied because the Court lacks subject matter jurisdiction; (2) the motions should be denied because they are not in compliance with 28 U.S.C. § 2001; and (3) if the sale is confirmed, the proceeds should be marshaled. (D.N. 36)

The Court has previously addressed Farmers' argument about subject matter jurisdiction so it will not be addressed here. (*See* D.N. 45; D.N. 57)

Huntington National Bank and LS Associates contend that the sale complies with the requirements set forth in 28 U.S.C. § 2001, and argue that marshaling should not be applied in this case. (*See* D.N. 46; D.N. 47; D.N. 48)

## II.   DISCUSSION

### A.   Compliance With 28 U.S.C. § 2001

The sale of real property in this situation is governed by 28 U.S.C. § 2001. Section 2001(b) provides

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale.

In this case, § 2001 is satisfied. Receiver LS Associates secured three disinterested persons to appraise the properties, and the Court adopts their appraisals. (D.N. 27; D.N. 32; D.N. 63) The sale price in both cases is well over two-thirds of the appraised value, and the parties do not contest the sale price of either property. (D.N. 27-1, PageID # 466; D.N. 32-1, PageID # 549) The hearing held on November 9, 2016, satisfied the hearing requirement. (D.N. 58) Finally, as ordered by the Court, the terms of the sale were published in a local newspaper for at least ten consecutive days prior to the Court's confirmation of the sale, and no bona fide offer

was reported. (D.N. 63) *See Huntington Nat. Bank v. JS & P, L.L.C.*, No. 2:13-CV-13841, 2014 WL 4374355, at *2 (E.D. Mich. Sept. 4, 2014) ("[B]efore confirming a sale, the Court must direct that the terms of the sale be published in a newspaper of general circulation at least ten days before confirmation of the sale."); *PNC Bank, N.A. v. Gator Piqua Partners, LLLP*, No. 3:12-CV-369, 2013 WL 6383080, at *2 (S.D. Ohio Dec. 5, 2013) (". . . the terms of the sale must be published in the newspaper for ten days."); *Sec. and Exch. Comm'n v. Tyler*, No. CIV.A.3-02-CV-0282-P, 2004 WL 859203, at *1 (N.D. Tex. Apr. 7, 2004) (ordered the receiver to publish notice of sale in local newspaper for "at least ten consecutive days").

In its response briefs, Farmers alleges that the proposed sale does not comply with 28 U.S.C. § 2001 because the receiver, rather than the Court, hired three disinterested persons to appraise the property. Farmers emphasizes that § 2001 calls for the *Court*, not the receiver, to appoint the appraisers. This argument is misplaced. As LS Associate's reply brief notes, receivers are considered officers of the court. *See Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). Thus, their "powers are coextensive with [their] order of appointment." *Id*. "The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Id*. In fulfilling this role, receivers may seek the appraisals themselves. *See, e.g.*, *Huntington Nat. Bank*, 2014 WL 4374355, at *2; *Agstar Fin. Servs., PCA v. Vreba-Hoff Dairy Dev., LLC*, No. 3:10-CV-00129, 2010 WL 7926233, at *1 (N.D. Ohio July 13, 2010); *Sec. and Exch. Comm'n v. T-Bar Res., LLC*, No. CIV.A.3:07CV1994-B, 2008 WL 4790987, at *1 (N.D. Tex. Oct. 28, 2008); *Sec. and Exch. Comm'n v. Kirkland*, No. 6:06-CV-183ORL28KRS, 2009 WL 1439087, at *2 (M.D. Fla. May 22, 2009).

At the hearing, while Farmers maintained that the receiver should have followed a different procedure for appointing the appraisers, it did not dispute the qualifications of the appraisers or the ultimate sales price of either property. Instead, Farmers acknowledged that it knew the three appraisers and recognized that they "frequently provide the master commissioner with appraisals of property" in the area. (D.N. 64, PageID # 867) Farmers also agreed that the sales price of the properties was "not unreasonable." (*Id.*)

Following the hearing, the Court ordered LS Associates to submit the professional qualifications of the appraisers. (D.N. 58) In response, the receiver submitted the credentials of the three selected appraisers. (D.N. 61) The Court has reviewed the qualifications of the appraisers and approves their selections.

For the reasons above, the Court finds that this sale is in compliance with 28 U.S.C. § 2001 and that these sales are in the best interest of the estate. Thus, the Court will grant these motions for the sale of real property.

B. **Marshaling of Assets**

Farmers requests that, if the properties are sold, Huntington be required to "marshal" the assets. (D.N. 36, PageID # 598-99) Farmers cites Kentucky law, explaining that

> The doctrine of marshaling assets requires that where two or more creditors seek satisfaction out of the assets of their common debtor, and one of them can resort to two funds where another has recourse to only one of the funds, the former creditor may be required to seek satisfaction out of the funds which the latter creditor cannot reach, before resorting to the other fund. By this method of distribution both creditors may be paid or both funds will be exhausted.

(*Id.* (citing *Bartley v. Pikeville Nat. Bank & Trust Co.,* 532 S.W.2d 446, 448 (Ky. 1975), *see also M.A. Walker Co., Inc. v. PBK Bank, Inc.*, 95 S.W.3d 70, 75-76 (Ky. 2002)). Farmers explains that the proposed Order for the sale of these properties calls for Huntington to receive the proceeds, and Farmers is concerned that they will not be able to recoup their debt. (*Id.*, PageID #

599) At the hearing, Farmers argued that Huntington has several outstanding claims "that could substantially reduce the amount of its claim against the campus or the real estate," including an insurance claim against SCC officers and a case currently pending against the Department of Education. (D.N. 64, PageID # 870) Farmers expressed concern that Huntington will accept less for the campus if it knows that it will be able to recover on these other claims. (D.N. 64, PageID # 870)

In response, Huntington argues that the assets should not be marshaled. First, Huntington asserts that "marshaling cannot be applied if a creditor holding a superior lien will be delayed or inconvenienced in the collection of its debt or prejudiced or injured in any manner." (D.N. 47, PageID # 716 (citing 53 Am. Jur. 2d *Marshaling Assets and Inverse Order of Alienation* § 15 (2016)) Huntington contends that as the uncontested superior lienholder of "substantially all, if not all" of SCC's real and personal property, marshaling will result in "inequitable delay." (*Id.*, PageID # 717-18) By marshaling these assets, Huntington claims that it will have to attempt to collect on all of their $24 million debt "before it can obtain access to the proceeds" from the sale of these properties. (*Id.*) This result will force Huntington to liquidate "more inaccessible collateral" first, which, it argues, it should not be required to do as the superior creditor. (*Id.*, PageID # 716-18) Additionally, Huntington points out that it has already advanced over $30,000 to maintain these properties, and Farmers, despite also having an interest in the properties, "has made no offers to share" these costs. Therefore, as marshaling is based in equity, "it would be highly inequitable to required that the proceeds" from the sale of the two properties "be segregated to protect [Farmers'] junior lien." (*Id.*, PageID # 717)

In this case, the parties recognize that the proceeds from the sale of these two properties is relatively small compared to the total amount of debt. (D.N. 64, PageID # 865, 871)

However, Farmers is concerned about the precedent that these sales will set with respect to the marshaling of assets, and wants to preserve its marshaling argument. (D.N. 64, PageID # 869, 877) Therefore, much of Farmers argument with respect to marshaling is speculative at this point. The receiver is in the very early stages of selling the campus, the Department of Education suit is pending, and no action has been taken against SCC officers. (D.N. 64, PageID # 872–73) *See St. Catharine Coll., Inc. v. King*, No. 3:16-CV-00113-GNS, 2016 WL 4033238, at *1 (W.D. Ky. July 27, 2016). As the Court mentioned at the hearing, Farmers will not be foreclosed from raising the marshaling argument in the future. 28 U.S.C. § 2001 will again have to be satisfied before the Court will approve the sale of the campus, giving Farmers an opportunity to raise any concerns about the sales price of the campus property. However, because the sales price of these properties is a small fraction of the overall debt, and the marshaling argument is too speculative, the Court will deny Farmers' request to marshal the proceeds from the sale of 3161 Bardstown Road and 2670 Bardstown Road.

### III. CONCLUSION

For the reasons discussed above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) The joint motion to approve the sale of 3161 Bardstown Road (D.N. 27) is **GRANTED**. Farmers' request to marshal the assets (D.N. 36) is denied.

(2) The joint motion to approve the sale of 2670 Bardstown Road (D.N. 32) is **GRANTED**. Farmers' request to marshal the assets (D.N. 42) is denied.

(3) The joint motion to expedite a hearing on pending sale motions (D.N. 33) is **DENIED AS MOOT**.

December 16, 2016

David J. Hale, Judge
United States District Court