UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

THE HUNTINGTON NATIONAL BANK,    Plaintiff,

v.    Civil Action No. 3:16-cv-465-DJH

SAINT CATHARINE COLLEGE, INC.,    Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Huntington National Bank filed this action as trustee to recover debts owed on bonds issued by Defendant Saint Catharine College, Inc. (Docket No. 1) Upon Huntington's unopposed motion, the Court appointed LS Associates, LLC as receiver to manage, maintain, preserve, and repair Saint Catharine's remaining assets. (D.N. 12) The Court also instituted a receivership stay on litigation against Saint Catharine. (*Id.*, PageID # 289) Nonparties Becky Lee Meadows, Scott Scheerhorn, Robert Akin, and Robert Hutchins have moved to lift the receivership stay so that they may file a putative class action against Saint Catharine. (D.N. 78) Nonparty Ellis Towing, LLC also asks the Court to lift the stay to allow it to initiate litigation against Saint Catharine. (D.N. 80) Additionally, Receiver LS Associates has moved to reduce funds held in a Student Refund Account for the purpose of paying receivership expenses. (D.N. 97) LS Associates has also filed an expedited motion for an order approving procedures in connection with the proposed sale of Saint Catharine's remaining assets. (D.N. 101) Intervening party Farmers National Bank opposes LS Associates' motions on a number of grounds. (*See* D.N. 98; D.N. 107)

For the reasons set forth below, the Court will partially grant the motion by Meadows, Scheerhorn, Akin, and Hutchins to lift the receivership stay. These nonparties may proceed with

1

their putative class action, but only after the proposed sale of Saint Catharine's remaining assets is complete. Additionally, the Court will grant Ellis Towing's motion to lift the receivership stay, LS Associates' motion to reduce funds held in the Student Refund Account, and LS Associates' motion for an order approving the proposed sale procedures.

## I. Background

Between 2004 and 2014, Saint Catharine issued a series of notes and other financial documents to collateralize its repayment obligations under its previously issued bonds. (D.N. 1, PageID # 3–4) In connection with the loan documents, Huntington, as trustee, was granted a mortgage and perfected security interest in Saint Catharine's real estate and the fixtures associated with the real estate. (*Id.*, PageID # 5) With financial difficulties mounting, Saint Catharine announced in June 2016 that it intended to discontinue its business operations effective July 31, 2016. (*Id.*, PageID # 6) Huntington then brought the present action, alleging that, by announcing its intent to discontinue its business, Saint Catharine had defaulted on its obligations under the loan documents. (*Id.*, PageID # 6–8)

Pursuant to the loan documents, Huntington was entitled to have a receiver appointed upon the filing of any action for money due under the bonds. (D.N. 4-1, PageID # 196) Accordingly, the Court appointed LS Associates as receiver to manage, maintain, preserve, and repair Saint Catharine's remaining assets. (D.N. 12) The Court also instituted a receivership stay, mandating that "[n]o individual or entity may sue [Saint Catharine] without first obtaining the permission of this Court." (*Id.*, PageID # 289) The Court thereafter granted LS Associates' unopposed motion to establish a Student Refund Account to handle student refund claims filed against Saint Catharine. (D.N. 17; D.N. 19)

2

In the meantime, Farmers National Bank sought to intervene in the dispute in light of an outstanding $1.5 million promissory note executed by Saint Catharine and delivered to FNB. (*See* D.N. 8, PageID # 235–36)  Pursuant to a stipulation by the parties, the Court granted FNB's motion to intervene.  (*See* D.N. 20; D.N. 21)  Around the same time, LS Associates and Huntington filed a number of joint motions requesting approval to sell certain personal property of Saint Catharine's at auction.  (D.N. 26; D.N. 27; D.N. 32)  The Court granted these motions. (D.N. 45; D.N. 68)  Consequently, Saint Catharine's only remaining significant asset is its former campus.  (*See* D.N. 104)

On March 28, 2017, nonparties Meadows, Scheerhorn, Akin, and Hutchins moved for an order lifting the receivership stay to allow them to proceed with a putative class action against Saint Catharine.  (D.N. 78)  Huntington and LS Associates have filed a joint response opposing this motion.  (D.N. 88)  On April 7, 2017, nonparty Ellis Towing, LLC likewise moved for an order granting it permission to proceed with litigation against Saint Catharine in a Kentucky state-court action.  (D.N. 80)  Saint Catharine initially opposed this motion (D.N. 84), but the parties have since stipulated that Ellis may proceed in the state-court action for apportionment purposes only.  (D.N. 86)

On September 28, 2017, LS Associates moved for an order authorizing it to reduce the funds held in the Student Refund Account to $50,000.  (D.N. 97)  In response, FNB stated a general objection "to the continued use of unencumbered funds for receivership activities solely or substantially for the benefit of [Huntington] and its bond holders, to the detriment of all other creditors."  (D.N. 98, PageID # 1375)  On November 2, 2017, LS Associates also moved for an order approving certain procedures to be employed in connection with a proposed sale of Saint Catharine's real estate and other remaining assets.  (D.N. 101)  FNB opposes this motion on a

number of grounds. (D.N. 107) The United States, as an intervening interested party, initially opposed the motion, citing an interest it allegedly has in a building within Saint Catharine's campus. (D.N. 106) LS Associates has since filed a revised proposed sale-procedures order, in which it addresses some of the issues raised by FNB and the United States. (D.N. 110-1) Indeed, LS Associates alleges that the United States now agrees with the proposed order. (*See* D.N. 110)

## II. Discussion

### A. LS Associates' Motion to Reduce Funds Held in the Student Refund Account

LS Associates moves for permission to reduce the funds held in the Student Refund Account to $50,000 and use the remaining balance of approximately $223,000 for receivership expenses. (D.N. 97) In support of its motion, LS Associates notes that since the Court's August 20, 2016 Order establishing the Student Refund Account, only $47,456.41 has been paid out to student refund claims. (*Id.*, PageID # 1368) The last such student refund claim was filed in November 2016. (*Id.*) Given the figures cited by LS Associates, the Court finds LS Associates' request and proposed resolution reasonable. FNB's general objection to the contrary is misplaced. FNB is correct that the vast majority of receivership expenses to date have been related to the preservation and attempted liquidation of Saint Catharine's campus. (*See* D.N. 99-1, PageID # 1388) FNB is also correct that preservation of the campus will largely benefit Huntington and Saint Catharine's bondholders alone, as the value of the property is likely less than the $24 million owed to bondholders. (*See* D.N. 98, PageID # 1376) At the hearing on this matter, however, FNB did not present a reasonable alternative approach that LS Associates could take that might result in a better return on Saint Catharine's remaining assets—one of the primary purposes of the receivership itself. (*See* D.N. 109)

Furthermore, even if FNB could present a reasonable alternative approach, prior orders from this Court grant LS Associates the power to reduce the Student Refund Account even without Court approval. The Court's Order establishing the Student Refund Account grants LS Associates the right "to withdraw funds in excess of the Reserve for purposes of paying expenses of this Receivership pursuant to the terms of the Receivership Order" upon receipt of approval by the Kentucky Council on Postsecondary Education. (D.N. 19, PageID # 375) LS Associates has received such approval. (D.N. 97, PageID # 1367) In addition, the Court's Order establishing the receivership states that "[t]he Receiver's compensation and receivership expenses and professional fees . . . shall be paid *first* from available cash and/or revenue."[1] (D.N. 12, PageID # 288 (emphasis added)) Accordingly, the Court will grant LS Associates' motion to reduce funds held in the Student Refund Account.

**B. LS Associates' Proposed Sale-Procedures Order**

LS Associates also moves for approval of a sale-procedures order in connection with a proposed sale of Saint Catharine's real estate and other remaining assets. Specifically, LS Associates seeks an order (i) approving sale procedures and bidding protections to be employed in connection with the proposed sale; (ii) scheduling an auction and a hearing to consider approval of the sale; (iii) approving the proposed notice of the dates, times, and places for the auction and the sale hearing; (iv) approving the proposed asset purchase agreement with the stalking-horse purchaser; (v) authorizing the sale of additional assets; (vi) authorizing the assumption and assignment of certain executor contracts and unexpired leases in connection with

---

[1] On a more basic level, the Court finds FNB's general objection unpersuasive considering that in the event the campus sells for below the $24 million owed to bondholders—which is likely— the largest unsecured creditor by a significant margin will be the bondholders for whom Huntington acts as trustee. (*See* D.N. 100, PageID # 1398) This is therefore not a situation in which a secured creditor is wasting unencumbered assets for its own benefit to the detriment of unsecured creditors.

the sale; and (vii) authorizing LS Associates to consummate all transactions related to the above-listed procedures. (D.N. 101, PageID # 1404–05) The following facts are relevant to resolution of this pending motion.

Since its appointment as receiver, LS Associates has taken a number of steps to liquidate Saint Catharine's remaining assets. (D.N. 101, PageID # 1406–07) At this time, Saint Catharine's only significant remaining non-cash assets are its real estate and potential causes of action. (*Id.*, PageID # 1407) In order to maximize the value achieved on the real estate, LS Associates retained CBRE, Inc. as an exclusive agent to list and market the campus portion of Saint Catharine's real estate. (*Id.*) "After extensive marketing by CBRE, communication with numerous potential interested parties, numerous site visits and negotiations," LS Associates executed a letter of intent with a potential purchaser for the purchase of substantially all of Saint Catharine's remaining assets. (*Id.*) The negotiations resulted in an Agreement for Purchase and Sale of Assets (the "APA"). (*See* D.N. 101-3) The APA essentially treats the potential purchaser as a stalking-horse bidder. The APA is thus subject to the bidding period, auction, and sale hearing outlined in LS Associates' proposed order. (D.N. 101, PageID # 1407–08) If the stalking-horse purchaser is not overbid and the APA is otherwise approved by this Court, however, the purchaser is contractually committed to purchasing the assets at issue for $4.7 million. (*Id.*, PageID # 1407)

The proposed order therefore establishes a nuanced sale procedure for the remainder of Saint Catharine's assets. It would establish rules for the submission and consideration of competing bids; schedule an auction, if needed; and schedule a sale hearing in this Court, at which LS Associates would ask the Court to enter an order authorizing LS Associates to close the transaction with the highest bidder. (*See id.*)

FNB objects to the proposed sale-procedures order on several grounds. (D.N. 107) Specifically, FNB argues: (i) the proposed sale is not a "public sale" under 28 U.S.C. §§ 2001 and 2004, nor does it comply with the statutory requirements of a "private sale"; (ii) the proposed timeframe for qualifying bids following entry of the proposed order is unreasonably narrow; and (iii) the proposed sale does not allocate the purchase price among Saint Catharine's remaining unencumbered assets. (*Id.*) The United States also filed an objection to the sale-procedures order, citing an interest it has in a building within Saint Catharine's real estate. (D.N. 106)

LS Associates has addressed most of these objections in its revised sale-procedures order. (*See* D.N. 110-1) It has extended the timeframe for submitting competing bids from 21 days to 45 days after the entry of the proposed order. (*Id.*, PageID # 1583) LS Associates also changed the proposed order's language to require publication of an abbreviated version of the Sale Notice in the *Courier-Journal* and *Springfield Sun* once per week for four weeks prior to the Bid Deadline. (*Id.*) Additionally, LS Associates added the following language:

> Notwithstanding any other provision of this Order, the objections raised in the United States' Opposition to Receiver's Sale Procedures Motion (D.N. 106) are preserved and reserved for the Sale Hearing. Nothing herein constitutes a waiver of the assertion of sovereign immunity by the United States, and the Receiver is not authorized to consummate any transaction that would convey property free and clear of any lien or other interest asserted by the United States absent further order of Court.

(*Id.*, PageID # 1587) According to LS Associates, the United States has "reviewed and approved" the revised sale-procedures order. (*See* D.N. 110, PageID # 1576) The Court will therefore address FNB's objections only.

The Court finds FNB's objections unpersuasive. First, the proposed sale qualifies as a public sale under 28 U.S.C. § 2001. Section 2001 states that

7

> Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. Such sale shall be upon such terms and conditions as the court directs.
>
> Property in the possession of a receiver or receivers appointed by one or more district courts shall be sold at public sale in the district wherein any such receiver was first appointed, at the courthouse of the county, parish, or city situated therein in which the greater part of the property in such district is located, or on the premises or some parcel thereof located in such county, parish, or city, as such court directs, unless the court orders the sale of the property or one or more parcels thereof in one or more ancillary districts.

28 U.S.C. § 2001(a).[2] The term "public sale" is not defined by statute. The available caselaw indicates that in approving similar proposed sales, courts have not required more than what 28 U.S.C. §§ 2001 and 2002 mandate. *See, e.g.*, *United States v. Jewell*, No. 1:16-cv-00476-GZS, 2017 WL 384284, at *1 (D. Me. Jan. 25, 2017); *TBF Fin., LLC v. Drouillard*, No. 2:14-cv-11495, 2016 WL 3902744, at *1 (E.D. Mich. July 19, 2016). Section 2002 states:

> A public sale of realty or interest therein under any order, judgment or decree of any court of the United States shall not be made without notice *published once a week for at least four weeks prior to the sale* in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the United States wherein the realty is situated.

28 U.S.C. § 2002 (emphasis added).

In light of 28 U.S.C. § 2002 and the limited caselaw on this issue, the Court finds that the proposed sale here qualifies as a "public sale." The proposed sale-procedures order mandates that notice of the bidding period, proposed sale, etc. be "(i) sent to every person/entity who had made any contact with CBRE regarding the campus; (ii) sent to all creditors and affected parties-in-interest; and (iii) publicized in the *Courier-Journal* and *Springfield Sun* for 4 weeks prior to

---

[2] 28 U.S.C. § 2004 further permits the sale of personal property in accordance with the procedures outlined in 28 U.S.C. § 2001.

the Bid Deadline." (D.N. 108, PageID # 1543) The proposed sale procedure thus satisfies the notice requirement outlined in § 2002. Furthermore, even if § 2001 requires more public outreach than the notice outlined in § 2002, LS Associates, through its agent CBRE, has extensively marketed the property to the public.[3] FNB's contention that the proposed sale is "to a limited audience" is therefore unpersuasive.[4] (*See* D.N. 107, PageID # 1536) The proposed sale qualifies as a "public sale" under 28 U.S.C. § 2001.

FNB's second ground for opposition fares no better. The newly proposed forty-five-day interval for competitive bidding is sufficient. First, as LS Associates mentions, a forty-five-day interval is longer than the timeframe mandated by 28 U.S.C. § 2002, which provides a four-week period for public notification. LS Associates proposes a nearly seven-week interval prior to the auction of the real estate. FNB has not explained why a longer period is necessary here. Moreover, a forty-five-day interval is reasonable in light of the tremendous effort LS Associates and CBRE have already expended on marketing the property and procuring a potential purchaser. (*See* D.N.101, PageID # 1406–07) It is thus likely that any interested buyer would have already been involved in the process. As LS Associates observes, a drawn-out bidding process may alienate the stalking-horse bidder—who has a contractual "out" if a sale order is not entered within a set number of days (D.N. 108, PageID # 1545)—and increase the carrying costs

---

[3] CBRE's marketing efforts included "(i) listing the campus on LoopNet, the most heavily trafficked commercial real estate service online; (ii) listing the campus on DealFlow, CBRE's proprietary sale database, which reaches tens of thousands of potential buyers; (iii) sending marketing blasts and availability reports to local brokers on a monthly basis; (iv) submitting a regional press release, which resulted in a Business First article; (v) direct outreach to all local and regional educational institutions; [and] (vi) discussions and property tours with the Commonwealth of [Kentucky]." (D.N. 108, PageID # 1543)

[4] FNB's citation to the Uniform Commercial Code to support its argument that the proposed sale is not a "public sale" is similarly unavailing; the Court is "not at liberty to disregard the explicit legislative mandate and impose additional requirements borrowed from state law for a public sale [under 28 U.S.C. § 2001(a)]." *J. Ray McDermott & Co. v. Vessel Morning Star*, 457 F.2d 815, 819 (5th Cir. 1972).

of the campus, which are currently approximately $30,000 a month and expected to increase during winter. (*Id.*) An expanded bidding period is therefore unnecessary, and the Court finds that the proposed forty-five-day interval for competitive bidding is sufficient.

As to FNB's final ground for objection, the Court agrees with LS Associates that a purchase-price allocation can be deferred until the Sale Hearing. It might be correct that given Huntington and the bondholders' security interest in "[a]ll revenues, receivables, accounts and assignable general intangibles," selling "both real property encumbered by [Huntington's] mortgage lien[ ] and tangible assets not subject to any lien in favor of [Huntington]" without an allocation of the purchase price might be inappropriate. (D.N. 107, PageID # 1537) Yet deferring price allocation is reasonable here in light of the fact that 99% of Saint Catharine's collateral has been sold already. (D.N. 109; *see also* D.N. 104) Indeed, FNB can point to no remaining tangible assets of any value. At the hearing on this matter, the only significant "asset" mentioned besides the campus were some receivables that go hand-in-hand with the obligation of providing Saint Catharine's former students their transcripts. (D.N. 109) Thus, any allocation among the assets will be best addressed at the Sale Hearing, at which the parties and this Court will have a better idea of the remaining unencumbered assets—if any.

The Court therefore agrees with LS Associates that the proposed sale-procedures order "respresent[s] the best way to achieve substantial consideration for Saint Catharine's assets, and offer[s] the best possible disposition of Saint Catharine's property in the manner that will maximize the value available to Saint Catharine's estate and its creditors." (D.N. 101, PageID # 1412) The Court will grant LS Associates' motion to approve the sale-procedures order.

**C. NonParties' Motion to Proceed with Putative Class Action**

Pursuant to the Court's Order appointing LS Associates as receiver, "[n]o individual or entity may sue the Receiver or Saint Catharine without first obtaining permission of this Court." (D.N. 12, PageID # 289) Nonparties Meadows, Scheerhorn, Akin, and Hutchins move to lift the receivership stay to allow them to file a putative class action against Saint Catharine. In the proposed complaint, the nonparties allege violations under the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. § 2101 *et seq.*, and Kentucky wage and employment laws, as well as breach of fiduciary duty under Kentucky statutory and common law. (D.N. 78-2, PageID # 1132–42) The claims arise from the nonparties' termination from employment with Saint Catharine. (*Id.*, PageID # 1126–28) Given Saint Catharine's dearth of assets, the nonparties stipulate that they intend to pursue the action "only to the extent that insurance coverage is available to indemnify St. Catharine College for the claims asserted in the [ ] Proposed Complaint." (D.N. 78-1, PageID # 1105)

The parties suggest that in the absence of a Sixth Circuit test for determining whether a receivership stay should be lifted, the Ninth Circuit's test set forth in *SEC v. Wencke*, 622 F.2d 1363 (9th Cir. 1980) ("*Wencke I*") and *SEC v. Wencke*, 742 F.2d 1230 (9th Cir. 1984) ("*Wencke II*") should be utilized. (D.N. 78-1, PageID # 1106; D.N. 88, PageID # 1209) *See also S.E.C. v. One Equity Corp*, No. 2:08–cv–667, 2010 WL 4878993, at *6–8 (S.D. Ohio Nov. 23, 2010) (applying the *Wencke* test). The Court concludes that the widely-accepted *Wencke* test is appropriate to the analysis here.

The *Wencke* test consists of three factors used in determining whether to lift a receivership stay:

> (1) [w]hether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to

11

proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.

*Wencke II*, 742 F.2d at 1231. With that said, "[t]he *Wencke* test simply requires the district court to balance the interests of the Receiver and the moving party." *S.E.C. v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985) (citing *Wencke I*, 622 F.2d at 1373).

Similarly, the first *Wencke* factor "essentially balances the interests in preserving the receivership estate with the interests of the [movants]." *S.E.C. v. Stanford Int'l. Bank Ltd.*, 424 F. App'x 338, 341 (5th Cir. 2012) (citing *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005)). Courts should give "appropriately substantial weight to the receiver's need to proceed unhindered by litigation, and the very real danger of litigation expenses diminishing the receivership estate." *Acorn Tech. Fund*, 429 F.3d at 443. Here, the nonparties argue that they will suffer irreparable harm if the stay is continued, as there is no tolling of any applicable statutes of limitations on their claims. (D.N. 78-1, PageID # 1110) The nonparties also maintain that any delay will make it more difficult to locate potential class members and serve the former officers and trustees for Saint Catharine who are also named defendants in the proposed lawsuit. (*Id.*)

LS Associates, on the other hand, maintains that a continuation of the stay is appropriate. Specifically, LS Associates notes that "the Receiver still has the difficult task of maintaining and securing a vacant college campus, while also trying to market that property for sale." (D.N. 88, PageID # 1211) Given that LS Associates would likely have to participate in the proposed litigation, LS Associates argues that forcing it to defend a class-action lawsuit would burden it at a time when its attention should be focused elsewhere (i.e., selling Saint Catharine's most valuable asset). (*Id.*)

The Court finds that the first *Wencke* factor is neutral. The Court agrees with the nonparties that LS Associates has "substantially completed its primary job of 'marshaling and untangling' [Saint Catharine's] assets and identifying its potential creditors." (D.N. 78-1, PageID # 1108–1109 (citing *SEC v. Private Equity Mgmt. Grp., LLC,* CV 09-2901 PSG EX, 2010 WL 4794701 (C.D. Cal. Nov 18, 2010) (lifting stay where receiver had progressed in the effort to organize and understand the entities under his control))) Nevertheless, maintaining the status quo would allow LS Associates to focus its attention on finalizing the sale of Saint Catharine's remaining assets. The Court also agrees with LS Associates that the nonparties' alleged harm is exaggerated. Given that a five-year limitation period likely applies to the nonparties' claims (*See* D.N. 88, PageID # 1210–11 (citing Ky. Rev. Stat § 413.120(2), (6); *N. Star Steel Co. v. Thomas*, 515 U.S. 29 (1995); *Ingram v. Cates*, 74 S.W.3d 783 (Ky. Ct. App. 2002); *Alcorn v. Gordon*, 762 S.W.2d 809 (Ky. Ct. App. 1988))) and that the majority of those claims did not accrue until 2016 (i.e., when Saint Catharine began its widespread layoffs), the potential harm to the nonparties if the stay is continued is minimal.[5] Moreover, as LS Associates notes, the nonparties can attempt to locate potential class members and defendants before the case is filed and regardless of whether the Court lifts the stay. (*Id.*, PageID # 1211) On the other hand, the nonparties' breach-of-fiduciary-duty claims likely arose prior to 2016 (i.e., when Saint Catharine's financial difficulties began). If this is the case, the nonparties' statute-of-limitations argument might have some merit.[6] The first *Wencke* factor is therefore neutral.[7]

---

[5] In reply, the nonparties do not specifically address this contention or the caselaw cited by LS Associates. (D.N. 91, PageID # 1310) Rather, they simply reiterate that they will suffer irreparable harm, "as there is no tolling of any applicable statutes of limitations for their claims." (*Id.*) Presumably, if the applicable limitation periods were closing soon, the nonparties' would cite the impending date by which they must assert their claims.

[6] This is assuming, of course, that these claims are not already time-barred by the five-year limitation period.

The second *Wencke* factor weighs in favor of the nonparties. This factor requires the Court to analyze the time in a receivership at which a motion to lift the stay is made. The timing factor is fact-specific and "based on the number of entities, the complexity of the scheme, and any number of other factors." *Stanford Int'l Bank Ltd.*, 424 F. App'x at 341. Furthermore, as LS Associates admits, this factor weighs in favor of lifting a stay where, as here, "the case has been pending a year or more." *See United States v. JHW Greentree Capital, L.P.*, No. 3:12–CV–00116 (VLB), 2014 WL 1669261, at *12 (D. Conn. June 11, 2014). In arguing that the second factor weighs in its favor, however, LS Associates again asserts that the proposed lawsuit is at an inappropriate juncture, "risk[ing] the consummation of a sale of [Saint Catharine's] real property." (D.N. 88, PageID # 1213) Nevertheless, the Court finds that the receivership has progressed to an extent that favors lifting the stay.

Finally, the inquiry under the third prong is whether "the [moving] party has colorable claims to assert which justify lifting the receivership stay." *Acorn Tech. Fund*, 429 F.3d at 443 (citing *Wencke II*, 742 F.2d at 1232); *see also Wencke I*, 622 F.2d at 1373 ("Where the claim is unlikely to succeed (and the receiver therefore likely to prevail), there may be less reason to require the receiver to defend the action now rather than defer its resolution."). The nonparties need not show that they are "likely to prevail on the merits." *One Equity Corp.*, 2010 WL 4878993, at *7. Although there is no caselaw defining "colorable claim" in the context of

---

[7] The nonparties' remaining arguments do not change this conclusion. Contrary to the nonparties' assertion, the fact that LS Associates has previously allowed other nonparties to proceed with litigation against Saint Catharine is irrelevant. (*See* D.N. 60; D.N. 86) The *Wencke* test requires the Court to balance the interests of the receiver and the specific moving party asking for a stay. *See Universal Fin.*, 760 F.2d at 1038. The nonparties' citation to *Geig v. The March Co.*, 59 F.3d 170, 1995 WL 376717 (6th Cir. Jan. 22, 1995), is also unpersuasive. Although the *Geig* court found that the establishment of a claim is less burdensome to a receiver than the attempted collection of a claim (*id.* at *4–5), that finding is irrelevant to this case, as the Court finds that LS Associates has adequately established that it will be burdened by defending against the nonparties' claims.

*Wencke*, the Sixth Circuit has held in another context that a "colorable claim" is one where there is any reasonable basis for predicting that the plaintiff could prevail. *Probus v. Charter Commc'ns, LLC*, 234 F. App'x 404, 407 (6th Cir. 2007). In viewing the proposed complaint, the Court finds that the nonparties have colorable claims against Saint Catharine. Saint Catharine unquestionably "terminated 100 or more employees . . . within a thirty-three day period ending July 31, 2016."[8] (D.N. 78-1, PageID # 1113) LS Associates has presented no evidence that Saint Catharine provided proper notice to those employees as required by the WARN Act. (*See* D.N. 88) Nor does LS Associates maintain that Saint Catharine complied with the Kentucky wage and employment laws at issue in the proposed complaint. (*Id.*)

Rather, LS Associates argues that the nonparties' claims under the WARN Act and Kentucky wage and employment law fail because "the Motion provides no detailed facts that would support those claims."[9] (D.N. 88, PageID # 1215) This is inaccurate. The proposed complaint provides ample facts in support of the allegations against Saint Catharine. (*See* D.N. 78-2) *See Acorn Tech. Fund*, 429 F.3d at 443. The third *Wencke* factor therefore weighs in favor of the nonparties.

With the second and third factors both weighing in favor of the nonparties, the Court finds that lifting the receivership stay is appropriate. Nevertheless, the Court is also mindful of LS Associates' repeated argument that its attention in the coming months should be spent

---

[8] No party disputes this contention.
[9] In discussing *Wencke*'s third prong, LS Associates also focuses on the fact that Saint Catharine's insurance policies might not cover the claims at issue in the proposed lawsuit. (D.N. 88, PageID # 1213–15) As stated above, however, the nonparties need not show that they will successfully recover on their claims. Rather, the third *Wencke* factor merely asks whether the movants have stated colorable claims. *Acorn Tech. Fund, L.P.*, 429 F.3d at 443. Furthermore, LS Associates' argument that the nonparties' breach-of-fiduciary-duty claims cannot proceed under Kentucky law is inapposite. Because the Court finds that the nonparties have stated colorable claims under the WARN act and Kentucky wage and employment laws, it need not address whether Kentucky law bars the breach-of-fiduciary claims at issue here.

finalizing the sale of Saint Catharine's real estate (an endeavor that, as explained above, will best maximize the value of Saint Catharine's remaining assets, which in turn benefits all creditors—including unsecured tort claimants). The best resolution is therefore to allow the nonparties to proceed with their proposed lawsuit, but only after the closing of the proposed sale.

**D. Nonparty Ellis Towing's Motion to Proceed with Pending Litigation**

As stated above, Ellis Towing and Saint Catharine have filed a stipulation resolving Ellis Towing's motion. (D.N. 86) The Court will therefore grant Ellis Towing's motion to proceed with its third-party claim in in Kentucky state court.

### III. Conclusion

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) LS Associates' motion to reduce funds in the Student Refund Account (D.N. 97) is **GRANTED**.

(2) LS Associates' motion for approval of its proposed sale-procedures order (D.N. 101) is **GRANTED**. The sale-procedures order will be entered separately.

(3) Nonparties Becky Lee Meadows, Scott Scheerhorn, Robert Akin, and Robert Hutchins's motion to proceed with the filing of a putative class action against Saint Catharine (D.N. 78) is **GRANTED IN PART**. The nonparties may proceed with the proposed litigation only after the sale of Saint Catharine's real estate and to the extent that insurance coverage is available to indemnify Saint Catharine for the claims asserted.

(4) Pursuant to the stipulation filed by Ellis Towing and Saint Catharine, Ellis Towing's motion to proceed with pending litigation in Washington County, Kentucky Circuit

Court (D.N. 80) is **GRANTED**. Ellis Towing may proceed with its third-party claim as agreed. (*See* D.N. 86)

December 12, 2017

**David J. Hale, Judge**
**United States District Court**